## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| NICK DOUCET, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Civil Action No.4:20-cv-01793 |
| v. | Judge Charles Eskridge |
| BOARDWALK PIPELINES, L.P., | |
| *Defendant*. | |

## CLEVELAND INTEGRITY SERVICE'S MOTION TO INTERVENE AND SUPPORTING BRIEF

Nick Doucet ("Doucet") has sued Boardwalk Pipelines, L.P. ("Boardwalk") for overtime under the Fair Labor Standards Act ("FLSA"). Doucet, however, was employed by and paid by Cleveland Integrity Services, Inc. ("CIS").

As Doucet's employer, CIS determined the central issues in his asserted claim for overtime under the FLSA: his pay and his duties. Plus, Doucet executed an arbitration agreement as a condition of his employment that precludes his participation in this lawsuit.

Pursuant to Federal Rule of Civil Procedure 24, CIS moves to intervene to address Doucet's employment claims. Its status as his employer and its arbitration agreement encompassing Doucet's claims justify both intervention as of right and permissive intervention.

1

## I.   FACTUAL BACKGROUND

### A.   CIS's Relationship with Boardwalk

CIS provides third-party inspection services for its customers and thus sends its inspectors to their projects. (Declaration of Michael Frye (filed as Dkt. 8-1) at ¶ 3.)  This is comparable to a CPA firm sending auditors to its clients.  In both instances, there is a compelling logic for having truly independent inspections done.

> Pipeline inspectors, like auditors, are hired to work independently, just like auditors:
>
> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, A Practical Guide for Pipeline Instruction Inspectors 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf.      And, because this inspection work requires specialized personnel for only the duration of the project, these assignments are for a finite period.

Boardwalk is one of CIS's customers. (Frye Declaration at ¶ 4.)  CIS controlled and directed its employees to provide the inspection services that Boardwalk requested. (Frye Declaration at ¶ 5.)  Boardwalk paid CIS an all-inclusive rate to compensate it for the services it provided; that rate covered CIS's overhead, equipment, material, salary, benefits, vehicle allowance and applicable taxes and withholdings under state and federal

law. (Frye Declaration at ¶ 6.)  From that amount, CIS, in its sole discretion, determined how much to pay each of its inspectors. (Frye Declaration at ¶ 6.)

### B.    CIS Employment of Doucet

CIS employed Doucet as a Chief Inspector and assigned him to provide inspection services on its behalf to different CIS customers. (Frye Declaration at ¶ 7.)  CIS first hired Doucet on February 5, 2018 and assigned him to its team servicing Boardwalk's projects. (Frye Declaration at ¶ 8.)  CIS employed Doucet and assigned him to Boardwalk from February 12, 2018 until December 1, 2018, and again from May 22, 2019 until July 28, 2019. (Frye Declaration at ¶ 15.)  In the interim, CIS assigned Doucet to another customer. (Frye Declaration at ¶ 15.)

As his employer, CIS determined Doucet's pay. (Frye Declaration at ¶ 13.)  CIS paid Doucet a "guaranteed minimum salary equal to four times the daily salary amount" based on FLSA regulations. (Frye Declaration at ¶¶ 13, 16.); *see* 29 C.F.R. § 541.604(b). CIS also determined that Doucet's pay and duties qualified him as overtime exempt administrative and executive employee under the FLSA. (Frye Declaration at ¶ 14.); *see also* 29 U.S.C. § 213.

Before he was hired, Doucet agreed to be subject to CIS's policies and procedures governing its employees. (*See* Frye Declaration at ¶ 10.)  In fact, during his hiring and onboarding process, Doucet signed or filled out *fourteen* separate documents identifying him as an employee of CIS. (Frye Declaration at ¶ 11.)  These included an Internal Revenue Service ("IRS") W-4 Tax Form. (Frye Declaration, Ex. K.)  Further, Doucet's own

communications with CIS concerning reimbursement policies reaffirm his status as a CIS employee. (Frye Declaration, Ex. Q.)

Significantly, Doucet also executed an arbitration agreement as a condition of his employment with CIS. (Frye Declaration at ¶ 9.)  Under that arbitration agreement, Doucet committed to "arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company." (Frye Declaration, Ex. B at ¶ 2.) Doucet also agreed that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." (Frye Declaration, Ex. B at ¶ 2.)

## II.   ARGUMENT

Doucet's lawsuit alleges that he was denied statutory overtime pay.  The central issue of in his case, accordingly, is whether Doucet was overtime exempt under the FLSA. But, rather than demanding arbitration with the entity that hired him, that determined he was overtime exempt, and that paid him (CIS), Doucet sues *only* its customer (Boardwalk). Because CIS was his actual employer, Doucet can only hold Boardwalk liable if it can show that Boardwalk *also* employed him as a joint employer with CIS.  Absent joint employment, Doucet has no claim against Boardwalk. *See, e.g.*, *Lundine v. Gates Corp.*, No. 18-1235-EFM, 2020 WL 1862578 (D. Kan. April 14, 2020) (dismissing FLSA claim by individual who was hired and paid only by staffing company, not the staffing companies customer she sued).

CIS's status as Doucet's actual employer (and potential joint employer with Boardwalk) provides a sufficient interest to intervene.  CIS has an interest in enforcing Doucet's commitment to arbitrate his FLSA claims as well as an interest in defending

against Doucet's claim challenging its decision to classify him as overtime exempt under the FLSA.  Permitting this lawsuit to go forward without CIS's participation would deprive CIS of these interests.

Therefore, CIS moves to intervene pursuant to Rule 24(a) and 24(b).  Further, pursuant to Rule 24(c), CIS attaches as Exhibit 1 a motion to compel arbitration, seeking to enforce Doucet's commitment to arbitrate his employment claims. *See, e.g., U.S. ex rel. Frank M Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)). CIS will file a motion to compel arbitration upon the Court's approval of its intervention.

### A.    Rule 24(a)(2): Intervention As Of Right

CIS's intervention is warranted.  In fact, three other courts addressing the exact same scenario as here (FLSA suit against customer brought by Doucet's counsel) have granted intervention to the actual employer. *Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-cv-01080-WSS-LPL, Dkt. 98 (W.D. Pa. Apr. 13, 2020), *report and recommendation adopted* No. 2:19-cv-01080-WSS-LPL, Dkt. 111 (W.D. Pa. May 1, 2020) is illustrative.

There too, the plaintiff (represented by Doucet's attorneys) took the same tactic: bringing an FLSA lawsuit against a customer of CIS.  The district court there rightly granted CIS's motion to intervene:

> They hired the subject employees, they determined how much to pay them, and they determined that they were exempt from overtime pay.  They provided the employees to the named Defendant.  The potential Intervenors appear at this stage to fit at least three out of the four relevant factors of being qualified as joint employers with Enbridge under the Third Circuit's definition.  Regardless of the indemnity issue, which the Court finds does not have to be proven at this time, they stated a sufficient interest in the litigation.

5

In addition, these potential employees, and others who may opt in later, have either agreed to a forum selection clause or arbitration agreement, both of which are being circumvented given that a joint employer of theirs was not named.

*Id*. at 6.

Similarly, *Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 30 (D. Wyo. Mar. 3, 2020) and *Ferrell v. SemGroup,* No. 4:19-cv-00610-GKF-JFJ, Dkt. 63 (N.D. Okla. June 12, 2020) confronted the same exact issue: an FLSA lawsuit brought (again by Doucet's counsel) not against the pipeline inspection services company that was the actual employer, but rather against that company's customer.

Those courts also granted the pipeline inspection services company's intervention:

- "[t]he Court finds the potential for Silver Creek [customer] to claim Applied [pipeline inspection services company] is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest." *Snow,* at 6.

- "[t]he court concludes that TIR's [pipeline inspection services company] potential liability as a joint employer and indemnity made upon it are sufficiently protectable interests which may be impaired if TIR is not permitted to intervene." *Ferrell*, at 7.

The logic of *Robertson, Snow,* and *Ferrell* apply equally here.  Indeed, those cases applied the same test that governs intervention in the Fifth Circuit.  *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994) (intervention is awarded if a party satisfies the following requirements: "(1) [t]he application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the

applicant must be so situated that disposition of the action may, as **a practical matter**, impair or impeded its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.") (emphasis added).

As illustrated by *Robertson, Snow,* and *Ferrell*, CIS meets all four *Espy* requirements.

**First**, CIS's motion is timely; intervention at this early stage of the litigation does not unduly delay or prejudice the rights of the Doucet or Boardwalk. *See, e.g., Lejeune v. Sany America, Inc*., Civil Action No. 17-130-JJB-EWD, 2017 WL 231390, at *2 (M.D. La. July 10, 2017) (motion to intervene timely where suit "is still in its early stages").

**Second**, CIS has an interest in this case on multiple levels:

**i.**      The central issue in this case is whether Doucet's pay and duties qualified him for an overtime exemption.  CIS has an interest in the adjudication of this issue because, as his employer, it set his job as overtime exempt and exclusively controlled his pay.  Further, any liability resulting is joint and several among joint employers. *See* 29 C.F.R. § 791.2(f) (providing "that [a] joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions . . .").  The potential that CIS (Doucet's actual employer) may be jointly liable with Boardwalk (if Doucet is able to show that Boardwalk also employed him) is a legally sufficient interest for intervention. *Kansas Public Emp. Retirement Sys. v. Reimer & Kroger Assoc.*, *Inc*., 60 F.3d 1304 (8th Cir. 2004) (granting intervention; the potential of joint and several liability was sufficient to allow intervention).

7

*Blundell v. Home Quality Care Home Health Care, Inc*., No. 3:17-cv-1990-L-BN, 2017 WL 5889715, at *3-4, 6 (N.D. Tex. Nov. 29, 2017) illustrates the potential risk to a joint employer.  There, the court stayed all proceedings in a FLSA suit against all joint employers after one joint employer filed a notice of bankruptcy because "[i]t is possible that a judgment under the FLSA against the [non-bankrupt joint employers] . . . would affect, and perhaps could be held binding on, the debtor [bankrupt joint employer's] estate." *Id*.  That risk not only warranted a stay in that case but also manifestly establishes the practical interest for intervention here.

       **ii**.      CIS not only has an interest in vindicating its proper classification of Doucet as overtime exempt but also has a distinct interest in enforcing Doucet's arbitration agreement.  Because CIS made the determinations at issue here, CIS will inevitably be involved in this litigation from start to finish.  Moving forward without CIS could result in Doucet being able to avoid the arbitration forum in which he committed to bring his individual employment claims. *See Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 41 (D. Wyo. Mar. 3, 2020) granting a motion to compel arbitration because the arbitration agreement -- which used the exact same language and structure as Doucet's -- required arbitration of all employment claims, regardless of whom they were brought against).  This would deprive CIS of the benefit of the bargain it struck with Doucet: in exchange for employing him and paying him significant compensation, CIS assured itself of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

**iii.**     Boardwalk has demanded that CIS indemnify any judgment or loss associated with Doucet's claim. (Frye Declaration at ¶ 17.)  This interest further establishes the right and need for CIS to ensure that the claims for overtime are vigorously and competently defended. *Team Worldwide Corp. v. Wal-Mart Stores, Inc*, No. 2:17-CV-00235-JRG, 2017 WL 6059303 at *4 (E.D. Tex. Dec. 7, 2017) (granting intervention in patent dispute where the defendant demanded indemnification; there was a sufficient interest because the proposed-intervenors' "products, not [the defendant's], will be the focus of the litigation" and the potential for indemnification gave the proposed-intervenors "a resulting financial stake in the outcome of this case").

**Third**, disposing of this action without CIS would impair those interests.  Most pointedly, its ability to defend against Doucet's claims that his compensation ran afoul of the FLSA would be, **as a practical matter**, limited.  If CIS -- the entity that set and paid Doucet's salary; determined that he was eligible for exempt status; and maintains the employment records on which his case is predicated -- is excluded, it would be deprived of the "opportunity to raise arguments and defenses before adjudication of its own liability to Plaintiff." *Clean Earth, Inc. v. Endurance Am. Ins.*, Civil Action No. 15-6111 (FLW), 2016 WL 5422063, at *4-5 (D.N.J. Sept. 28, 2016) (granting motion to intervene where the intervenor could be held liable without having opportunity to dispute that liability; the intervenor's interest in raising its defenses was impaired and could not be cured "simply because [the intervenor] has an opportunity to defend against an indemnification claim by [the defendant]").  Further, if CIS is unable to defend its practices and Boardwalk suffers an adverse judgment, that judgment could be viewed by CIS's other customers as an

adverse judgment against CIS. *See Uniloc 2017 LLC v. AT&T Mobility, LLC*, No. 2:18-CV-00514-JRG, 2019 WL 1773117, at *3 (E.D. Tex. Apr. 23, 2019) (granting intervention because patent infringement allegations against the manufacturer-intervenor's customer put the manufacturer's "customer base and reputation at risk").

**Fourth**, CIS's interest is not adequately represented by the existing parties.  As *Robertson* recognized, "[a]lthough the interests of [CIS] are like those of [Boardwalk], they diverge in that [CIS is] the entit[y] that determine and cut the paychecks; they also have employment contracts with the opt-in plaintiff[] that [Boardwalk] does not." *Id.* at 8.

Boardwalk did not classify Doucet as exempt, nor write his paychecks. CIS's "superior understanding" of his employment classification and "greater access to relevant documents and individuals may result in" its "interests being inadequately represented" if it is not allowed to intervene. *Advanced Dynamic Interfaces, LLC v. Aderas, Inc*., C.A. No. 12-cv-963 (GMS), 2013 WL 6989428, at *1 n.1 (D. Del. Jan. 11, 2013) (granting intervention in a patent suit brought against intervenor's customer because the company was the creator and manufacturer of the products at issue).

Moreover, CIS is one of multiple companies engaged by Boardwalk to provide inspection services.  There is, thus, a genuine risk that Boardwalk may make tactical litigation decisions that favor other entities or itself at a sacrifice to CIS or even choose to settle in a manner that disadvantages CIS. *See Adam Joseph Resources v. CAN Metals Ltd.*, 919 F.3d 856, 868 (5th Cir. 2019) (inadequacy of representation illustrated by a settlement that disadvantaged the intervening party).  Likewise, "in light of the indemnity demand, it

10

is likely that [Boardwalk] will point the finger to [CIS] and argue that [CIS] must bear sole liability for any FLSA violation." *Ferrell*, at 8.

**B.      Rule 24(b)(1)(B): Permissive Intervention**

Even if there could be doubt about intervention as of right, CIS is entitled to intervene as a matter of permission on those same considerations.  Rule 24(b)(1)(B) allows permissive intervention to anyone who timely asserts "a claim or defense that shares with the main action a common question of law or fact."  Both are met here.

There are undeniably **common questions of law**: *e.g.*, the enforcement of Doucet's arbitration commitment.  That common issue in and of itself warrants intervention. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002) (granting permissive intervention in a trade secrets suit to the customer of both parties where the lawsuit questioned whether the customer conspired with the defendant to disclose trade secrets because, in part, the customer and the plaintiff had an arbitration agreement and both the customer and defendant argued that arbitration should be compelled); *Robertson*, at 10 (determining whether a court is the proper forum for an FLSA claim given an arbitration agreement is a common question of law).

There are also **common questions of fact**.  The central issue in this suit is whether Doucet's pay and duties qualify him as overtime exempt under the FLSA.  These questions cannot be resolved without addressing the actions of CIS, which paid his salary and determined that his duties and salary met the administrative exemption requirements under the FLSA.  CIS asserts a defense -- that it properly classified Doucet -- that shares common facts with any argument Boardwalk may make on the merits. *Robertson*, at 11 (deciding

11

that "[a]ny determination that Enbridge [the sued customer] violated the law would be based on the joint employment relationship, which would implicate the potential Intervenors" such that there are common questions of fact weighing in favor of permissive intervention).

Put differently, a full airing of the facts upon which liability depends is not possible without the participation of Doucet's actual employer: CIS. *See Snow*, at 10 (determining that allowing the actual employer -- also an inspection services company -- in an FLSA suit brought against that company's customer "adds value and significantly advances the full and complete development of the factual and legal issues raised in the underlying action").

## IV.    CONCLUSION

For these reasons, CIS should be allowed to intervene in this case.

Date: June 23, 2020

Respectfully submitted,

Cleveland Integrity Services, Inc.

/s/ Nicole Figueroa
Nicole Figueroa
McDermott Will & Emery LLP
2501 N. Harwood Street
Dallas, Texas 75201
(214) 295-8062 (phone)
(972) 767-0190 (fax)
nfigueroa@mwe.com

Rachel B. Cowen, *pro hac vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
rcowen@mwe.com

## CERTIFICATE OF CONFERENCE

On June 22, 2020, CIS's counsel conferred with Plaintiff's counsel and Plaintiff is opposed to this Motion.  On the same date, CIS's counsel also conferred with Defendant's counsel and Defendant does not oppose this Motion.

/s/ Nicole Figueroa

Nicole Figueroa

## CERTIFICATE OF WORD COUNT

This Motion is 2,977 words in 13 point Times New Roman font.

/s/ Nicole Figueroa

Nicole Figueroa

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned does certify that on the 23rd day of June 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

<u>/s/ Nicole Figueroa</u>

Nicole Figueroa

14