United States District Court
Southern District of Texas
**ENTERED**
March 18, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NICK DOUCET, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:20-CV-1793 |
| | § | |
| BOARDWALK PIPELINES, L.P., | § | |
| | § | |
| **Defendant,** | § | |
| | § | |
| CLEVELAND INTEGRITY SERVICES, | § | |
| INC., | § | |
| | § | |
| **Intervenor-Defendant,** | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the Court[1] is Intervenor Cleveland Integrity Services, Inc.'s ("CIS") Motion to Compel Arbitration (Dkt. No. 33). The Court has considered the motion, the responses, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that CIS's Motion to Compel Arbitration be **GRANTED**.

**I.     BACKGROUND**

CIS is an inspection services company that hires and provides inspectors to oversee various projects for other companies.[2] Defendant Boardwalk Pipelines, L.P. ("Boardwalk") is an energy company that hired CIS to oversee pipeline construction and improvement projects.[3] On February

---

[1] The District Judge referred the entire case to the Magistrate Judge for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure ("Rule") 72. (*See* Dkt. No. 29.)

[2] Dkt. No. 8-1 at 1.

[3] *Id.*; Dkt. No. 10 at 2.

5, 2018, CIS hired Plaintiff Nick Doucet ("Doucet") as a chief inspector and assigned him to a team that worked on Boardwalk's projects.[4]

CIS determined Doucet's pay[5] and classified Doucet as an overtime exempt employee under the Fair Labor Standards Act ("FLSA").[6] During the hiring and onboarding process with CIS, Doucet signed an arbitration agreement that committed Doucet to arbitrate "all claims that have arisen or will arise out of Employee's employment with or termination from the Company."[7] Boardwalk is not a signatory to the agreement.

On May 22, 2020, Doucet sued Boardwalk for overtime compensation under the FLSA.[8] On June 19, 2020, Boardwalk filed a Motion to Compel Arbitration.[9] On June 23, 2020, CIS filed a Motion to Intervene and argued its status as Doucet's employer and its arbitration agreement encompassing Doucet's claims justified intervention.[10] The Court granted CIS's Motion to Intervene.[11] Thereafter, CIS filed its own Motion to Compel Arbitration.[12]

## II.   LEGAL STANDARDS

Under the Federal Arbitration Act ("FAA"), ordinary principles of state contract law

---

[4] Dkt. No. 8-1 at 2. CIS assigned Doucet to Boardwalk projects from February 12, 2018 to December 1, 2018 and May 22, 2019 to July 29, 2019. (*Id.* at 4.) From December 2018 to May 2019, CIS assigned Doucet to a different customer. (*Id.*)

[5] CIS paid its employees using the all-inclusive rate it received from Boardwalk for its services. (*Id.* at 1–2.)

[6] *Id.* at 3.

[7] *Id.* at 3, 9–10.

[8] Dkt. No. 1.

[9] Dkt. No. 8. The Court previously denied Boardwalk's Motion to Compel Arbitration as moot and informed the parties that the Court would soon issue an order on whether the arbitration clause was applicable to both Boardwalk and CIS. (Min. Entry dated Feb. 11, 2021.)

[10] Dkt. No. 10.

[11] Dkt. No. 31.

[12] Dkt. No. 33.

determine whether there is a valid agreement to arbitrate. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *see also Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018); *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011). Here, Texas state law governing "the validity, revocability, and enforceability of contracts generally" controls the dispute. *Arthur Andersen*, 556 U.S. at 631.

"Under Texas law, a party can compel arbitration only by establishing: (1) the existence of a valid agreement to arbitrate; and (2) that the claims asserted by the party attempting to compel arbitration are within the scope of the arbitration agreement." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (citing *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 377 (Tex. App.—Tyler 1996, writ dism'd w.o.j)). Unless there is a federal statute or policy to the contrary, the Court must analyze both steps and compel arbitration if both elements are satisfied. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.021; *Sherer v Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

In considering the scope of the agreement, the Court's inquiry is more limited if the agreement contains a delegation clause. *Ferguson v. Weatherford Lamb Inc.*, No. 4:19-CV-02086, 2020 WL 7024342, at *2 (S.D. Tex. Nov. 30, 2020). The only question then "is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). If there is a delegation clause, a court should grant the motion to compel arbitration in almost all cases. *Id.*; *see Edwards v. Doordash Inc.*, 888 F.3d 738, 743 (5th Cir. 2018). But when a plaintiff directly attacks the delegation clause's validity, as opposed to the validity of the arbitration provision or the contract as a whole, a court, not an arbitrator, "must first consider the challenge before ordering compliance with that agreement under

[FAA] § 4." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)

## III. ANALYSIS

CIS contends that, according to its arbitration agreement with Doucet, arbitrability must be decided by the arbitrator and that, even if arbitrability is decided by the Court, the arbitration agreement encompasses Doucet's claims.[13] Doucet counters that his arbitration agreement only applies to claims against CIS and since Doucet's claims are only against Boardwalk, there is nothing to trigger his arbitration agreement.[14] Doucet also adds that CIS "may not use either the delegation clause or the broad language describing the scope of Doucet's [arbitration] agreement" to compel Doucet to arbitrate with Boardwalk.[15]

a. <u>Arbitrability</u>

CIS and Doucet disagree over whether arbitrability should be decided by the arbitrator or the Court. The question before the Court is whether Doucet can be compelled to arbitrate his employment claims against Boardwalk. Doucet does not dispute that he is required to arbitrate with CIS, but maintains that his claims are only against Boardwalk, a non-signatory. Doucet is silent as to CIS's argument that only CIS employed him, paid him, and determined his overtime exemption status, which are all actions at the heart of Doucet's lawsuit against Boardwalk.

When an arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the Court's analysis changes. *Kubala*, 830 F.3d at 201. Delegation clauses are enforceable and transfer the Court's power to decide arbitrability questions to the arbitrator. *Id.* Thus, a valid delegation clause requires the Court to

---

[13] *Id.* at 3.
[14] Dkt. No. 35 at 5.
[15] *Id.*

4 / 10

refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues. *Rent–A– Ctr.*, 561 U.S. at 68–69.

Before turning to the delegation clause dispute, the Court must first determine whether a valid agreement exists.[16] *See Kubala*, 830 F.3d at 202. Doucet does not dispute that he has a valid arbitration agreement with CIS. Therefore, the Court finds the first step satisfied.

As to the delegation clause, unless there is "clear and unmistakable" evidence, "courts may not assume that parties have agreed to arbitrate" arbitrability. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). A party can demonstrate clear and unmistakable evidence by "expressly incorporating rules empowering the arbitrator to decide substantive arbitrability" into a contract. *Halliburton*, 921 F.3d at 537.

Rule 7(a) of the American Arbitration Association's ("AAA") Commercial Arbitration Rules provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Here, the arbitration agreement states that "[a]rbitration shall be conducted in accordance with the [AAA]'s Employment Arbitration Rules."[17] Thus, by incorporating the AAA rules into the agreement, the evidence clearly and unmistakably shows that the parties agreed to delegate issues of arbitrability to the arbitrator. *See Ferguson*, 2020 WL 7024342, at *4 (noting that the Fifth Circuit has previously held

---

[16] The question at the first step of the analysis is not "whether there is an agreement to arbitrate *the claim currently before the court*." *See Kubala*, 830 F.3d at 202. "[T]he only issue at the first step is whether there is any agreement to arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step." *Id.*

[17] Dkt. No. 8-1 at 9.

that incorporation of AAA rules into an arbitration agreement made threshold questions of arbitrability ones for the arbitrator to decide); *see also Harris v. Tucker Entm't, LLC*, No. 3:20-CV-651-L-BK, 2020 WL 6370160, at *3 (N.D. Tex. Oct. 6, 2020), *report and recommendation adopted*, 2020 WL 6363877 (Oct. 29, 2020).

Doucet argues that incorporation of the AAA rules is not enough and cites to *J2 Res., LLC v. Wood River Pipe Lines, LLC*, No. 4:20-CV-2161, 2020 WL 4227424, at *9 (S.D. Tex. July 23, 2020). There, despite incorporation of the AAA rules, the *J2 Resources* court found it needed to determine the scope of the delegation clause because one party argued that the scope of the delegation clause only applied to a narrow set of claims that were not at issue in the case.[18] *Id.* at *10. Out of an abundance of caution, the Court will do the same here.

Doucet argues that the agreement does not clearly and unmistakably delegate arbitrability to the arbitrator because "the arbitrator could not award anything a court could not award."[19] Doucet provides no legal support as to this explanation. Further, the Court finds Doucet's argument unpersuasive. There is nothing in the text of the agreement that limits the scope of the delegation clause such that Doucet's employment claims are not covered by the agreement, and Doucet fails to identify where such a limitation exists.[20] Thus, the Court finds that the scope of the delegation

---

[18] Specifically, the *J2 Resources* court stated, "[d]espite the various cases that may seem to suggest that the mere existence of a delegation clause precludes a determination of that clause's scope, the Court finds that the incorporation of the AAA's Commercial Rules as to some claims does not end the inquiry into whether the claims Defendants seek to arbitrate are covered by that delegation clause." 2020 WL 4227424, at *9

[19] Dkt. No. 35 at 14–15.

[20] Doucet states that even if Doucet was "able to prove every element of his FLSA claim against Boardwalk, the arbitrator would have no power to award [Doucet] relief against CIS." (*Id.*) The Court cannot discern Doucet's reasoning as he repeatedly argues that he has not brought a claim against CIS, yet Doucet suggests he could possibly be awarded relief from CIS.

clause covers Doucet's claims.

      b.  <u>Scope of Agreement</u>

Even if the delegation clause did not extend to the instant claims and the Court conducted the next step in the analysis, Doucet's claims are within the scope of the arbitration agreement.[21]

The parties disagree as to whether the claims arising from Doucet's FLSA cause of action against Boardwalk are within the scope of the agreement.[22] The Court notes that there are three cases that are identical to the instant case where district courts outside the Fifth Circuit ultimately compelled arbitration. *See Snow v. Silver Creek Midstream Holdings, LLC*, 467 F. Supp. 3d 1168 (D. Wyo. Apr. 14, 2020); *Altenhofen v. S. Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 6877575 (W.D. Ky. Nov. 23, 2020); *Robertson v. Enbridge (U.S.), Inc.*, No. 19-1080, 2020 WL 5751641 (W.D. Pa. July 31, 2020), *report and recommendation adopted*, 2020 WL 5702419 (Sept. 24, 2020). These cases involve a worker (like Doucet) who was employed and paid by one company (like CIS) that was assigned to complete projects for a separate company (like Boardwalk). The cases involved arbitration agreements between the worker and their employer. In

---

[21] Doucet does not specifically address the scope of the arbitration agreement. Instead, Doucet argues that the arbitration agreement does not create a third-party beneficiary status for Boardwalk. (*Id.* at 17.) CIS does not argue the agreement creates a third-party benefit for Boardwalk. The question before the Court at this step is whether Doucet's employment claims are within the scope of the arbitration agreement he has with CIS. Not whether the arbitration agreement creates a third-party beneficiary status for Boardwalk.

[22] While CIS, a signatory to the arbitration agreement, moves to compel arbitration, the Court recognizes that there are no claims brought by Doucet against CIS. This creates a different factual scenario from the other cases within the Southern District of Texas dealing with similar issues. *See 5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*, 463 F. Supp. 3d 785 (S.D. Tex. 2020) (claims against both a signatory and non-signatory); *Moore v. Maverick Nat. Res., LLC*, No. CV H-20-591, 2020 WL 6431905 (S.D. Tex. Oct. 15, 2020), *report and recommendation adopted,* No. CV H-20-591, 2020 WL 6392854 (Nov. 2, 2020) (claims brought a non-signatory; signatory not a party to the case).

each case, the worker chose to bring an FLSA claim against the company they were assigned to

for work, not their employer. In each case, the employer intervened in the case, like CIS did here.

In the end, each court found the worker could be compelled to arbitration.

The reasonings from *Snow*, *Altenhofen*, and *Robertson* are particularly persuasive because

the language contained in the arbitration agreements in those cases is the same as the language

here. The instant arbitration agreement states, in pertinent part:

> Both Cleveland Integrity Services, Inc. ("Company") and you
> ("Employee") agree to the terms and conditions of this Mutual
> Arbitration Agreement ("Agreement") as an efficient, impartial and
> cost-effective dispute resolution procedure.
>
> **1.  Mutual Agreement**
> This Agreement covers all claims by the Employee against the
> Company or by Company against the Employee. All references to
> "Employee" include his or her estate or other representatives; all
> references to "Company" include its affiliates or agents.
>
> . . .
>
> **2.  Claims Covered**
> The Employee and the Company agree to arbitrate all claims that
> have arisen or will arise out of Employee's employment with or
> termination from the Company regardless of whether those are
> claims under common law or under statutory law.[23]

The district court in *Snow* analyzed identical language when deciding the scope of the

arbitration agreement:

> The provision under paragraph one is broad but only to claims [the
> worker] and [the employer] have against each other. Paragraph two
> is broader. This paragraph is not limited to claims [the worker] and
> [the employer] have against each other but covers all the claims the
> parties have arising from [the worker]'s employment. In other
> words, [the employer] agrees to arbitrate all claims that will arise
> out of [the worker]'s employment with it; [the worker] agrees to

---

[23] Dkt No. 8-1 at 9.

> arbitrate all claims that arise out of his employment with [the employer]. The present case involves a claim that arises out of [the worker]'s employment with [the employer]. It is over whether he was improperly denied overtime pay. [The employer] issued his paychecks. Furthermore, the broad provision under paragraph two provides a presumption in favor of arbitration.

*Snow*, 467 F. Supp. 3d at 12. The *Snow* court's analysis equally applies here. Doucet claims that he was incorrectly determined to be overtime exempt and is owed overtime pay. CIS employed Doucet, paid Doucet, and determined his overtime exemption status. Thus, Doucet's claims arise directly out of his employment with CIS. This does not change simply because Doucet chose to sue Boardwalk instead of CIS. As the district court in *Altenhofen* stated, "[t]o read the contract any differently as [Doucet] suggests would render paragraph two meaningless." *Altenhofen*, 2020 WL 687757, at 11.

Doucet argues that CIS is attempting to transform the arbitration agreement into an agreement to arbitrate with Boardwalk.[24] This argument is without merit. CIS contends that the arbitration agreement between Doucet and CIS encompasses all claims arising out of Doucet's employment with CIS. Thus, when Doucet's claims arise directly out of his employment with CIS, as they do here, arbitration should be compelled. Doucet further argues that reading the arbitration agreement this way results in Doucet having to "arbitrate certain claims with, well, everyone on earth."[25] This argument is equally without merit as, again, the arbitration agreement is limited to claims that arise out of Doucet's employment with CIS.

Accordingly, Doucet's claims against Boardwalk fall within the scope of his arbitration agreement with CIS.

---

[24] Dkt. No. 35 at 5.
[25] *Id.* at 20.

**IV.      CONCLUSION**

The Court **RECOMMENDS** that CIS's Motion to Compel Arbitration (Dkt. No. 33) be **GRANTED**. If this Recommendation is adopted, all parties are **ORDERED** to submit their dispute to binding arbitration and the case will be stayed pending the outcome of arbitration proceedings.

**SIGNED** in Houston, Texas on March 18, 2021.

Sam S. Sheldon
United States Magistrate Judge